UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID MURRAY,

                 Petitioner,

           -against-

SUSAN SCHULTZ, Superintendent, Mid Orange
Correctional Facility,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

         :
         :
         :           05 Civ. 0472 (KMW) (AJP)
         :        **REPORT AND RECOMMENDATION**
         :
         :
         :

**ANDREW J. PECK, United States Chief Magistrate Judge:**

**To the Honorable Kimba M. Wood, United States District Judge:**

         Pro se petitioner David Murray seeks a writ of habeas corpus from his December 18, 2001 conviction of two counts of third degree criminal sale of a controlled substance and one count of third degree criminal possession of a controlled substance, and sentence to five to ten years imprisonment. (Dkt. No. 1: Pet. ¶¶ 1-5.) See People v. Murray, 308 A.D.2d 397, 397, 764 N.Y.S.2d 626, 627 (1st Dep't 2003), appeal denied, 1 N.Y.3d 599, 776 N.Y.S.2d 231 (2004).

         Murray's habeas petition raises the same two grounds that he raised on appeal before the First Department, alleging that he was denied his right to due process and a fair trial: (1) when, during redirect examination of a key witness, the prosecutor developed a theory of events beyond

the scope of both direct and cross-examination (Pet. ¶ 13(1)) and (2) by prosecutorial misconduct during summation (id. at ¶ 13(2)).

For the reasons set forth below, Murray's habeas petition should be DENIED.

## FACTS

### The Prosecution's Case at Trial

The prosecution's case rested primarily on the testimony of Officer Edward Simonetti, who witnessed Murray exchanging drugs for money with two individuals during separate transactions on April 4, 2001. (E.g., Simonetti: Trial Transcript ["Tr."] 233-37.) Four other police officers testified about Murray's subsequent arrest while in possession of $35 and ten glassine envelopes of heroin,[1/] as well as the arrest of the two individuals identified as buyers in the transactions. (See, e.g., Fontanez: Tr. 362-64; Caban: Tr. 373-74; Jeselson: Tr. 387-88; Papa: Tr. 398.)

#### Officer Simonetti's Testimony

##### Direct Examination

On direct examination, Officer Simonetti testified that his "Street Narcotics Enforcement Unit" team observed Murray selling drugs while conducting an "observation post operation" initiated in response to complaints about drug dealing by area residents. (Simonetti: Tr.

---

[1/] The prosecution also presented testimony from a police chemist who analyzed the substance in the envelopes and concluded that it was heroin. (Yu: Tr. 352, 358.) The defense neither cross-examined the chemist nor contested her conclusions. (Id. at 359.)

224, 228, 232-37.) During the operation, Officer Simonetti and six other police officers traveled to 118th Street and 7th Avenue in Manhattan. (Id. at 227-28.) Officer Simonetti, accompanied by another officer who did not testify, perched on the rooftop of a nearby building with a pair of binoculars and scanned the area below for "anybody who looked suspicious." (Id. at 228-29, 247.) The remaining five officers comprised the apprehension teams, and remained on the ground to arrest any individuals that Officer Simonetti identified as buying or selling drugs. (Id. at 227-28.)

Officer Simonetti testified that Murray initially drew his attention because he was "standing by a garbage pail and a light post with absolutely no other purpose than walking in circles." (Id. at 233.) Three minutes after arriving at his rooftop post, Officer Simonetti saw another man approach Murray and purchase drugs from him. (Id. at 228, 233.) Officer Simonetti radioed a description of the buyer to the apprehension team, which arrested the buyer, identified as Eddie King, and recovered two glassine envelopes of "Shock"-branded heroin. (Id. at 233-36; Fontanez: Tr. 362-64.)

A short while later, Officer Simonetti saw a second man, identified after his arrest as Anthony Allen, approach Murray and engage in conversation. (Simonetti: Tr. 237.) Officer Simonetti testified that after the two men conversed,

> I then saw Mr. Murray take the white envelopes, give them to the man, the man gave him money, placed it into his pocket. Then . . . they had another brief conversation. They had a transaction for the envelopes and the money again.

(Id. at 237-38.) Officer Simonetti radioed their descriptions to the apprehension team officers who arrested Murray and Allen. (Caban: Tr. 373; Jeselson: Tr. 387.) Allen possessed eight glassine

envelopes of "Shock" heroin.  (Simonetti: Tr. 240; Caban: Tr. 374).  Murray dropped ten envelopes

of "Shock" heroin to the ground when confronted by an officer, who recovered the dropped heroin

and arrested Murray.  (Jeselson: Tr. 387-88.)

The area where the drug sales occurred was 930 feet from a school.  (Simonetti: Tr.

265-66.)

### Cross-Examination

Murray's defense counsel cross-examined Officer Simonetti in an attempt to establish

that Allen was actually the seller during both transactions and that Murray simply bought some

heroin for personal use during the second transaction.  To support this theory, Murray's attorney first

focused on Murray and Allen's similar appearances by eliciting descriptions of both men from

Officer Simonetti.  (Simonetti: Tr. 308-09, 313-14.) Officer Simonetti testified that both Murray and

Allen were over 50 years old, 5'9" tall, and 160 pounds.  (Id. at 309, 313-14.)  Each had a beard and

mustache and wore black leather jackets and hats.  (Id. at 300-01, 308-09.)

Defense counsel attempted to discredit the accuracy of the suspects' descriptions that

Officer Simonetti had radioed to the apprehension team.  (E.g., id. at 271-77.)  When Officer

Simonetti testified he had accurately described Murray's attire during those transmissions, defense

counsel challenged him with a form, completed by Sgt. Caban based on the seller's description that

Officer Simonetti radioed from his observation post, that appeared to contradict those descriptions.

(Id. at 279-82, 296-97, 306-07.)  Although Murray wore blue jeans and a black sweater when

arrested, the form indicated that the seller wore black pants and a blue sweatshirt.[2/]  (Id. at 279-80, 303-06.)

Finally, Murray's attorney interrogated Officer Simonetti at length about the relative quantities of cash and narcotics found on Murray and Allen.  (Simonetti: Tr. 323-27, 333-34.) Officer Simonetti acknowledged that although the heroin Murray sold had a street value of $100, he was arrested with only $35 in cash.  (Id. at 323, 333).  Meanwhile, Allen possessed $207, including forty-seven one-dollar bills.  (Id. at 324.)  When defense counsel asked Officer Simonetti why he thought Allen had so much cash, Officer Simonetti testified that it was "the beginning of the month. . . . A lot of people get paid or get their checks in the beginning of the month."  (Id. at 324-25.)  Defense counsel confronted Officer Simonetti with an evidence voucher on which Officer Simonetti had indicated the money was illegal proceeds from the sale of narcotics.  (Id. at 325-26.) Officer Simonetti stated that at the time he completed the voucher, he believed "[i]t could have been possible" that Allen had been selling heroin.  (Id. at 327.)  He also acknowledged that he originally charged Allen with possession with intent to sell rather than simple possession.  (Id. at 325.)

---

[2/]     Officer Simonetti suggested that the abbreviation on the form describing the color of Murray's pants read "BLE," indicating blue, rather than "BK" for black.  (Simonetti: Tr. 279-80. 296-97, 300.)   However, Sergeant Caban testified that he had written "BK," indicating that he heard Officer Simonetti say the seller wore black jeans.  (Caban: Tr. 380.)

**Re-direct Examination**

_____ On re-direct examination, the prosecutor and Officer Simonetti had the following exchange over defense objections:

[A.D.A CABRERA]:         Are you familiar with the term "reup"?

[Defense Counsel] YUCEVICIUS:    Judge, objection.

A.     Yes.

MR. YUCEVICIUS:  Beyond the scope of cross-examination.

THE COURT:         Overruled.

Q.     What does "reup" refer to?

A.     Basically, when a dealer starts to run out, his supplier will either come along either some time during the day and relieve him of some money and give him some more product, more drugs to sell.  That is a "reup."

Q.     And in this case, is that something that may have happened here?

MR. YUCEVICIUS:  Objection, judge.

THE COURT:         Sustained.  Don't ask him to speculate, please.

(Simonetti: Tr. 339-40.)  The prosecutor did not further pursue this line of questioning.  (See id. at 340.)

**Re-Cross Examination**

On re-cross examination, defense counsel apparently sought to preempt the prosecution from arguing that the transaction between Murray and Allen constituted the type of "reupping" exchange that Officer Simonetti had described on redirect.  (Simonetti: Tr. 345.)

Murray's counsel asked Officer Simonetti about the exact mechanics of the exchange between Murray and Allen. (Id. at 345-46.) Officer Simonetti testified that he had seen Murray and Allen "give each other drugs and money" rather than simply engaging in a one-way drug sale. (Id. at 346.) Officer Simonetti claimed he had "stated that in direct in the beginning. . . . I said I saw several transactions of money and drugs when I was first examined." (Id.)

Defense counsel also challenged Officer Simonetti with the initial and amended felony complaints against Murray and Allen. (Id. at 346-47.) The reports contained no suggestion that Murray and Allen were working together. (Id. at 347-48.) Officer Simonetti acknowledged that he had not previously advanced a "reupping" theory or charged Murray and Allen with working together to sell drugs. (Id. at 346-48.)

**<u>Defense Motions</u>**

After the close of the prosecution's case, the trial judge denied the defense's motion for a mistrial. (Tr. 400-01, 403.) The defense did not put on any witnesses. (Tr. 403.)

Murray's counsel requested that the judge bar the prosecutor from arguing that Allen had resupplied Murray rather than just buying drugs from him. (Tr. 405.) Defense counsel stated that arguments based on the new theory should be forbidden because "Mr. Murray is charged as the sole seller . . . there is no charge of Mr. Murray having acted in concert with anybody, simply that he was the sole seller[] in this case." (Id.) The judge denied the request, stating that "[I]t is my understanding of the law that there doesn't have to be such an allegation. So I don't think I need to deal with that any further." (Id.)

**Defense Summation**

The defense noted that the prosecution's case "rises or falls with the testimony of Police Officer Simonetti. (Defense Summation: Tr. 409, 411-12.) Murray's counsel's summation reiterated his claim that Officer Simonetti had confused Murray with Allen. (<u>E.g.</u>, <u>id</u>. at 407-08.) In support of this theory, the defense focused on the physical similarities between Murray and Allen and the clothing they wore (<u>id</u>. at 418-22), the disparity in the amount of currency found on each (<u>id</u>. at 422-23, 429), and the inconsistencies between Officer Simonetti's testimony and the written description form (<u>id</u>. at 414-16, 424-28).

Murray's counsel also extensively discussed the prosecution's "changing of gears" during redirect by suggesting that Allen was a higher level dealer who had resupplied Murray; calling the "reupping" theory "desperate," defense counsel questioned why Murray would still have cash and Allen still have heroin if such a reupping exchange had occurred. (<u>Id</u>. at 430-31.) Specifically, defense counsel argued:

> Now, the evidence as revealed through Simonetti is so weak against Mr. Murray that from the first time <u>on redirect examination you saw a complete changing of gears in this case</u>. The indictment charges one person with a sale, Mr. Murray. He is not charged with acting with anybody else. In fact, until redirect examination, you have always heard Anthony Allen referred to as buyer number two. What do you hear about for the first time on redirect examination? Simonetti knows that he really has a problem when a hundred dollars worth of heroin is sold supposedly to Mr. Murray, he has got $35 in his pocket. Now all of a sudden on redirect examination for the first time by the prosecution Simonetti realizes they can't prove this sale with just Mr. Murray. Now it becomes Allen and Murray are really working together. Allen supposedly is the reup man, collecting the cash. Why didn't he collect the other $35? Give more heroin to his street level dealer? Why did Allen still have eight or 13 glassines of heroin left? It is desperate. Don't fall for it. <u>Don't</u>

let the prosecution, Simonetti, <u>say for</u> three-quarters, eight-tenths, nine-tenths of <u>the whole trial there is one seller here and at the last second when they are going down the tubes, don't let them try to say, well, we have an entirely new theory</u>.

(<u>Id</u>., emphasis added.)  The defense suggested that the only thing Murray was guilty of was the misdemeanor of possession for personal use, not intent to sell.  (<u>Id</u>. at 433-34.)

**<u>Prosecution Summation</u>**

The prosecutor's summation reviewed the testimony by Officer Simonetti and the other police witnesses to dispel the defense mistaken identity theory.  (<u>See</u> State Summation: Tr. 436-43.)  The prosecutor said there was no question that Murray had sold drugs to the first buyer, Eddie King.  (<u>Id</u>. at 439-40.)

At one point the prosecutor said, defense counsel "would have you believe that the officers in this case are essentially conspiring to frame his client."  (<u>Id</u>. at 446.)  The judge sustained the defense's objection that no such argument was made.  (<u>Id</u>.)

The prosecutor turned to the "reupping" theory.  (<u>Id</u>. at 447.)  The prosecutor described the mechanics of Murray's sale to King and the exchange between Murray and Allen, which was consistent with re-upping:

And I will explain to you exactly what is going on here.  <u>The first sale is a sale that we know in the traditional sense</u>:  Someone approaches you, <u>someone gives them drugs, in exchange for money sale as you know it</u>.

<u>But under the law, any exchange of drugs is a sale</u>, and here what turns out to be is the following:  <u>We know that Mr. Murray did in fact engage in a sale with this person, Mr. King</u>.  With respect to this person, Mr. Allen, what is happening is Mr. Allen and Mr. King – Mr. Murray know each other.

And how do we know that they know each other?  They engage in a brief conversation, they talk with each other.  And what is happening?  They walk from this location.  And you can tell from the pictures, it is a busy intersection.  And what do they do?  Well, they walk to the middle of the block in the area that is not as busy.

And why do they do that?  Well, <u>it did come up in redirect what was going on.  Mr. Allen was essentially relieving Mr. Murray of drug proceeds on that evening, and he may have been giving Mr. Murray some more drugs to sell in that location.  The back and forth exchange makes a lot of sense, and it is consistent with this, in the reupping, as Officer Simonetti put it</u>.  He was reupping his supply, unloading some of the money.

And <u>these guys are experts at this</u> because –

[Defense Counsel] YUCEVICIUS:    Objection, judge.

[A.D.A.] CABRERA:            – because they know –

THE COURT:            You may proceed.

MR. CABRERA:            It is a <u>game for these guys.  They are drug sellers</u>.

MR. YUCEVICIUS:  Objection, judge.

MR. CABRERA:            And what does a drug seller do?

THE COURT:            You have to focus on the charges here, please, Mr. Cabrera.

MR. CABRERA:            So what happens is <u>Mr. Allen relieves Mr. Murray of some money.  Mr. Murray made some money that evening, so he gets to keep some, but he has to continue making his living, so he keeps some drugs, too</u>.

(<u>Id</u>. at 447-48, emphasis added.)

A short time later, after describing how repeated complaints from the community had led to the police operation in which Murray was arrested (<u>id</u>. at 449), the prosecutor stated that "if

there is any wrongdoing by the police, I am sure that this community would have said something about that." (<u>Id.</u> at 450.)  The trial judge sustained defense counsel's objection.  (<u>Id.</u>)

The prosecutor summed up by rebutting the defense's argument that Murray was just a drug buyer, not a seller:

> And <u>Mr. Yucevicius would have you believe that his client is actually a buyer, not a seller</u>.  Well, let's look at that.  He expects you to believe that his client is a buyer, but that is just not the case.  But let's compare the activity between this man and this man, Mr. King and Mr. Murray.  <u>Mr. King is a buyer.  There is no question about that because a buyer buys, he doesn't stick around.  He leaves, and that is what Mr. King did</u>.  He bought his drugs and he left the location.  <u>Mr. Murray, if he is a buyer, what is he doing at the corner?  If you buy your drugs, you don't stick around;</u> you take off.  It is the middle of the afternoon.  Take off, you go on your way.  But, no, he sticks around.
>
> And keep in mind, ladies and gentlemen, there is no bus stop here.  Look at the pictures.  There is no bus stop.  There is no subway station.  There is no movie theater.  What other purpose does he have?  He is there because he is selling drugs.
>
> Again, ladies and gentlemen, <u>there are two sales in this case.  The first sale pretty clear-cut.  Mr. King approaches Mr. Murray, hand-to-hand exchange; one person received money, Mr. Murray, the other person, Mr. King, received drugs</u>.
>
> <u>The second sale, not the traditional "sale" that we know.  It is an exchange nevertheless.  The defendant exchanging his money and drugs with another person, Mr. Anthony Allen</u>.
>
> The evidence in this case is clear.  There is no doubt that this is the right person, the person that did in fact sell drugs.  Based on the surrounding circumstances we know that this man, Mr. Murray, did in fact sell drugs.  So ladies and gentlemen, the question of whether this defendant did in fact sell drugs, the answer to that question is, yes, he did.

(Id. at 450-52, emphasis added.)

**The Defense's Second Mistrial Motion and Request for Jury Instruction**

Citing both the prosecutor's arguments that Murray and Allen were working in concert and the prosecutor's statement about the vigilance of the community towards police wrongdoing, Murray's counsel moved for a mistrial.  (Tr. 453.)  The judge noted that he had sustained an objection to the latter, and asked what the defense would like him to do.  (Id.)  Defense counsel requested a curative jury instruction regarding the prosecutor's statements about the community's vigilance towards police misconduct.  (Tr. 453-54.)  The trial judge declined to issue the requested curative instruction, noting that she already sustained an objection to the statement during summation and she was "not quite sure why [she] should be telling them the exact same thing all over again."  (Id. at 454.)

During her charge to the jury, the judge gave the jury a general instruction that "[t]estimony . . . to which an objection was sustained must be disregarded." (Charge: Tr. 461.)  The judge also instructed the jury that lawyers' arguments are not evidence, stating:  "The lawyers have made arguments to you about the evidence but what they say, whether a question or an argument, is not evidence." (Id.)  Of course, the judge also instructed the jury about the prosecution's burden to prove Murray guilty beyond a reasonable doubt, including the correctness of the identification of Murray as the seller.  (Id. at 469-71, 473-76, 479.)  In addition to the sale and sale on school ground charges, the judge instructed the jury on the lesser included offense of simple possession of heroin, for personal use rather than sale.  (Id. at 480-81.)

**The Verdict and Sentence**

The jury found Murray guilty of selling heroin to both King and Allen and of felony possession of heroin. (Verdict: Tr. 492-95.) The jury acquitted Murray of two counts of selling a controlled substance in a school zone. (Id.)

On December 18, 2001, based on Murray's status as a predicate felony offender, the judge sentenced Murray to five to ten years imprisonment on each of the three counts, to be served concurrently. (Sentencing: 12/18/01 Tr. 2-3, 6.)

**Murray's Direct Appeal**

Represented by the Center for Appellate Litigation, Murray appealed his conviction to the First Department, on two grounds. (See Dkt. No. 1: Pet. Att.: Murray 1st Dep't. Br.) First, he argued that the prosecutor's introduction of the "reupping" theory during redirect examination of Officer Simonetti deprived Murray of a fair trial because the questions were beyond the scope of issues raised in cross-examination, and the error was not harmless. (Murray 1st Dep't Br. at 13-22.) Second, Murray challenged several comments in the prosecutor's summation, claiming the comments improperly bolstered the testimony of Officer Simonetti and suggestively characterized the defendant as an "expert . . . drug seller." (Id. at 23-28.)

On September 25, 2003, the First Department rejected both claims on the merits and unanimously affirmed Murray's conviction, holding in full:

> The court properly exercised its discretion in permitting redirect examination of a police witness that explored possible explanations of a matter raised by defendant on cross-examination. The matter elicited on redirect was responsive to

defendant's efforts to suggest that during the transaction at issue he was a buyer and not a seller.

        The challenged portions of the People's summation do not warrant reversal. The courts' curative actions during the summation were sufficient to prevent any improprieties from causing any prejudice.

People v. Murray, 308 A.D.2d 397, 397, 764 N.Y.S.2d 626, 627 (1st Dep't 2003) (citations omitted).

On January 28, 2004, the New York Court of Appeals denied leave to appeal. People v. Murray, 1

N.Y.3d 599, 776 N.Y.S.2d 231 (2004).

**Murray's Federal Habeas Petition**

        Murray's federal habeas petition raises the same two claims he raised before the First

Department, alleging that he was denied his right to due process and a fair trial: (1) when, during

redirect examination of Officer Simonetti, the prosecutor developed the re-upping theory of events

that Murray alleges was beyond the scope of both direct and cross examination (Dkt. No. 1: Pet.

¶ 13(1)); and (2) prosecutorial misconduct during summation (id.¶ 13(2)).

**ANALYSIS**

**I.**      **THE AEDPA REVIEW STANDARD**[3/]

---

[3/]    For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *14-17 (S.D.N.Y. Jun. 10, 2005) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *9-11 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *5-8 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.); Curry v. Burge, 03 Civ. 0901, 2004 WL 2601681 at *8 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL (continued...)

Before the Court can determine whether Murray is entitled to federal habeas relief,

the Court must address the proper habeas corpus review standard under the Antiterrorism and

Effective Death Penalty Act ("AEDPA").

---

3/    (...continued)
2504382 at *16 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *10 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.); Medina v. McGinnis, 04 Civ. 2515, 2004 WL 2088578 at *7-9 (S.D.N.Y. Sept. 20, 2004) (Peck, M.J.); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *11-13 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.); Gillespie v. Miller, 04 Civ. 0295, 2004 WL 1689735 at *6-8 (July 29,2004) (Peck, M.J.); Castro v. Fisher, 04 Civ. 0346, 2004 WL 1637920 (S.D.N.Y. July 23, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 2525876 (S.D.N.Y. Nov. 8, 2004) (Cote, D.J.); Del Pilar v. Phillips, 03 Civ. 8636, 2004 WL 1627220 at *7-9 (S.D.N.Y. July 21, 2004) (Peck, M.J.); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056 at *8-10 (S.D.N.Y. June 16, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 1656568 (S.D.N.Y. July 23, 2004) (Berman, D.J.); Brown v. Fischer, 03 Civ. 9818, 2004 WL 1171277 at *4-6 (S.D.N.Y. May 27, 2004) (Peck, M.J.); Rodriguez v. Goord, 02 Civ. 6318, 2004 WL 540531 at *10-13 (S.D.N.Y. Mar. 19, 2004) (Peck, M.J.); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *22-24 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.); Hernandez v. Filion, 03 Civ. 6989, 2004 WL 286107 at *8-10 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004) (Berman, D.J.); Gomez v. Duncan, 02 Civ. 0846, 2004 WL 119360 at *14-16 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my earlier cases); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002) (Scheindlin, D.J.), aff'd, No. 02-2540, 368 F.3d 179 (table), 2004 WL 1094269 (2d Cir. May 18, 2004); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000) (McKenna, D.J.), aff'd, 303 F.3d 411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, No. 01-2474, 41 Fed. Appx. 497, 2002 WL 1448474 (2d Cir. June 28, 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[4/]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[5/]  Both,

---

[4/]  See also, e.g., Henry v. Poole, 419 F.3d 48, 67 (2d Cir. 2005); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[5/]  Accord, e.g., Henry v. Poole, 419 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[6/] "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42. "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

---

[6/]    Accord, e.g., Yarborough v. Alvarado, 124 S. Ct. 2140, 2147 (U.S. 2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[7/]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[8/] However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522; accord, e.g., Henry v. Poole, 419 F.3d at 68 ("The 'unreasonable application' standard is independent of the 'contrary to' standard; and it is less clearly defined."). The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id.[9/] Rather, the issue is "whether the state court's application of clearly established

---

[7/]    Accord, e.g., Brown v. Payton, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Henry v. Poole, 419 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir. 2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[8/]    Accord, e.g., Brown v. Payton, 125 S. Ct. at 1439; Wiggins v. Smith, 123 S. Ct. at 2534-35; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[9/]    See also, e.g., Yarborough v. Alvarado, 124 S. Ct. at 2150; Wiggins v. Smith, 123 S. Ct. at 2535; Price v. Vincent, 123 S. Ct. at 1853 ("As we have explained, 'a federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Henry v. Poole, 419 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; (continued...)

federal law was objectively unreasonable."  Williams v. Taylor, 529 U.S. at 409, 120 S. Ct. at 1521.[10/]  "Objectively unreasonable" is different from "clear error."  Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"  Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[11/]  "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule."  Yarborough v. Alvarado, 124 S. Ct. at 2149.[12/]

---

[9/]     (...continued)
DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[10/]    Accord, e.g., Yarborough v. Alvarado, 124 S. Ct. at 2150; Wiggins v. Smith, 123 S. Ct. at 2535; Price v. Vincent, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Henry v. Poole, 419 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Yung v. Walker, 296 F.3d at 135; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[11/]    Accord, e.g., Henry v. Poole, 419 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[12/]    The Supreme Court explained:

(continued...)

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[13]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 125 S. Ct. at 853.

---

[12] (...continued)

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

Yarborough v. Alvarado, 124 S. Ct. at 2149.

[13] Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220: Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a 'determination on the merits' and as such requires the deference specified by § 2254." Moreover, "[I]f any reasonable ground was available [for the state court's decision], we must assume that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word

'denied' – triggered AEDPA deference.").[14/] "By its terms, § 2254(d) requires such deference only with respect to a state-court 'adjudication on the merits,' not to a disposition 'on a procedural, or other, ground.' Where it is 'impossible to discern the Appellate Division's conclusion on [the relevant] issue,' a federal court should not give AEDPA deference to the state appellate court's

---

[14/]  Accord, e.g., Cox v. Donnelly, 387 F.3d at 197 ("Neither the Appellate Division nor the New York Court of Appeals addressed [petitioner's] argument beyond a brief statement that the argument was without merit. In the absence of any expressed reasoning behind this conclusion, we turn directly to the facts of the case to determine whether Strickland was applied unreasonably."); Dallio v. Spitzer, 343 F.3d at 559-60; Parsad v. Greiner, 337 F.3d at 180-81; Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); Eze v. Senkowski, 321 F.3d at 121; Ryan v. Miller, 303 F.3d at 245; Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir.), cert. denied, 537 U.S. 1093, 123 S. Ct. 694 (2002); Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001).

The Second Circuit "recognize[d] that a state court's explanation of the reasoning underlying its decision would ease our burden in applying the 'unreasonable application' or 'contrary to' tests." Sellan v. Kuhlman, 261 F.3d at 312. Where the state court does not explain its reasoning, the Second Circuit articulated the analytic steps to be followed by a federal habeas court:

> We adopt the Fifth Circuit's succinct articulation of the analytic steps that a federal habeas court should follow in determining whether a federal claim has been adjudicated "on the merits" by a state court. As the Fifth Circuit has explained, "[W]e determine whether a state court's disposition of a petitioner's claim is on the merits by considering: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999).

Sellan v. Kuhlman, 261 F.3d at 314; accord, e.g., Cotto v. Herbert, 331 F.3d at 230; Eze v. Senkowski, 321 F.3d at 121-22; Norde v. Keane, 294 F.3d at 410; Aparicio v. Artuz, 269 F.3d at 93; see also Dallio v. Spitzer, 343 F.3d at 560.

ruling." <u>Miranda</u> v. <u>Bennett</u>, 322 F.3d 171, 177-78 (2d Cir. 2003) (citations omitted).[15/] Of course, "[i]f there is no [state court] adjudication on the merits, then the pre-AEDPA, <u>de novo</u> standard of review applies." <u>Cotto</u> v. <u>Herbert</u>, 331 F.3d at 230.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); <u>accord</u>, <u>e.g.</u>, <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181 (quoting § 2254(e)(1)).

The First Department here decided Murray's claims on the merits. (<u>See</u> pages 13-14 above.) Accordingly, AEDPA deference applies.

---

[15/]    The Second Circuit in <u>Miranda</u> v. <u>Bennett</u> continued: "Generally, when the Appellate Division opinion states that a group of contentions is either without merit 'or' procedurally barred, the decision does not disclose which claim in the group has been rejected on which ground. If the record makes it clear, however, that a given claim had been properly preserved for appellate review, we will conclude that it fell into the 'without merit' part of the disjunct even if it was not expressly discussed by the Appellate Division." <u>Id.</u> at 178.

## II.  MURRAY'S CLAIM THAT THE REDIRECT EXAMINATION OF OFFICER SIMONETTI DEPRIVED HIM OF A FAIR TRIAL DOES NOT PROVIDE A BASIS FOR HABEAS RELIEF

Murray claims that he was deprived of a fair trial because, during redirect examination, the prosecutor asked Officer Simonetti a question about "reupping" that Murray argues (1) exceeded the scope of issues raised during direct and cross-examination, (2) improperly "elicit[ed] speculation," and (3) resulted in a witness "switch[ing] testimony." (Dkt. No. 1: Pet. ¶ 13(1); Dkt. No. 1: Pet. Att.: Murray 1st Dep't Br. at 13-22.)[16/]

---

[16/]   In his pro se habeas petition, Murray's challenge to the trial testimony actually raises only the last two claims, namely, that the prosecutor improperly elicited speculation from "the witness" (whom the Court assumes to be Officer Simonetti), and that "the witness" gave inconsistent testimony between direct and redirect examinations. (Pet. ¶ 13(1).) However, Murray's appeal to the First Department challenged Officer Simonetti's testimony solely on the ground that the "reupping" theory exceeded the scope of defense counsel's cross-examination. (Murray 1st Dep't Br. at 13-22.) Because Murray attached his First Department brief to his habeas petition and the First Department decided the issue of the scope of redirect on its merits, People v. Murray, 308 A.D.2d 397, 397, 764 N.Y.S.2d 626, 627 (1st Dep't 2003), this Court will construe the language of the pro se petition liberally and consider this claim as part of the habeas petition. (See also Dkt. No. 6: State Br. at 6 n.3; Dkt. No. 8: Murray Traverse Aff. at p. 1.: "Respondent's assumptions are correct. It's same as petition to appellate court and state appeals court. There is no issues of new claim.")

### A. Federal Habeas Review Standard for Claims of Error in State Evidentiary Rulings[17/]

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'").[18/] Thus, a habeas petitioner must demonstrate that the allegedly-erroneous state court evidentiary rulings violated an identifiable constitutional right. See, e.g., Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988) ("The [habeas] court must determine whether the exclusion [of testimony] was an error of constitutional dimension. . . ."); Taylor v. Curry,

---

[17/] For additional cases authored by this Judge discussing the habeas corpus review standard for claims of error in state evidentiary rulings, in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *25-27 (S.D.N.Y. Jun. 10, 2005) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *11-13 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *15-1**6** (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.); Hernandez v. Filion, 03 Civ. 6989, 2004 WL 286107 at *10-12 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.); McPherson v. Greiner, 02 Civ. 2726, 2003 WL 22405449 at *19-21 (S.D.N.Y. Oct. 22, 2003) (Peck, M.J.); Soto v. Greiner, 02 Civ. 2129, 2002 WL 1678641 at *8-10 (S.D.N.Y. July 24, 2002) (Peck, M.J.); Jamison v. Grier, 01 Civ. 6678, 2002 WL 100642 at *15-16 (S.D.N.Y. Jan. 25, 2002) (Peck, M.J.); Thomas v. Breslin, 01 Civ. 6657, 2002 WL 22015 at *5-6 (S.D.N.Y. Jan. 9, 2002) (Peck, M.J.).

[18/] See also, e.g., Ventura v. Artuz, 99 Civ. 12025, 2000 WL 995497 at *12 & nn.19-20 (S.D.N.Y. July 19, 2000) (Peck, M.J.) (citing cases); Roldan v. Artuz, 78 F. Supp. 2d 260, 276 (S.D.N.Y. 2000) (Batts, D.J. & Peck, M.J.); Grant v. Demskie, 75 F. Supp. 2d 201, 209 (S.D.N.Y. 1999) (Sprizzo, D.J. & Peck, M.J.), aff'd, 234 F.3d 1262 (2d Cir. 2000); Benitez v. Senkowski, 97 Civ. 7819, 1998 WL 668079 at *4-5 (S.D.N.Y. Sept. 17, 1998) (Cote, D.J. & Peck, M.J.); James v. Senkowski, 97 Civ. 3327, 1998 WL 217903 at *5-6 (S.D.N.Y. Apr. 29, 1998) (Cote, D.J. & Peck, M.J.).

708 F.2d 886, 890-91 (2d Cir.) ("Erroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue <u>only</u> where petitioner can show that the error deprived her of a <u>fundamentally fair</u> trial.") (emphasis in original), <u>cert. denied</u>, 464 U.S. 1000, 104 S. Ct. 503 (1983); <u>see also</u>, <u>e.g.</u>, <u>Vega</u> v. <u>Portuondo</u>, No. 03-2856, 120 Fed. Appx. 380, 382, 2005 WL 78786 at *1 (2d Cir. Jan. 10, 2005) ("Even assuming, for the sake of argument, that petitioner is correct to assert that admission of [the evidence] was erroneous as a matter of [state] law, this alone would not suffice to merit federal habeas relief. . . . 'The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice.'") (citations omitted). That is a "heavy burden, for 'generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation.'" <u>Bonet</u> v. <u>McGinnis</u>, 98 Civ. 6529, 2001 WL 849454 at *2 (S.D.N.Y. July 27, 2001).[19]

The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional.[20] <u>See</u>, <u>e.g.</u>, <u>Brooks</u> v. <u>Artuz</u>, 97 Civ. 3300, 2000 WL

---

[19]      <u>See also</u>, <u>e.g.</u>, <u>Roldan</u> v. <u>Artuz</u>, 78 F. Supp. 2d at 276 (citing cases); <u>Grant</u> v. <u>Demskie</u>, 75 F. Supp. 2d at 209; <u>Benitez</u> v. <u>Senkowski</u>, 1998 WL 668079 at *5; <u>James</u> v. <u>Senkowski</u>, 1998 WL 217903 at *5.

[20]      This assumes that the petitioner has not attacked the constitutionality of the state evidentiary
(continued...)

1532918 at *6, 9 (S.D.N.Y. Oct. 17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); <u>Jones</u> v. <u>Stinson</u>, 94 F. Supp. 2d at 391-92 (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis).[21/]

  Second, the petitioner must allege that the state evidentiary error violated an identifiable constitutional right. This necessarily eliminates consideration of purely state evidentiary

---

[20/]   (...continued)
rule itself. <u>See</u> <u>Jones</u> v. <u>Stinson</u>, 94 F. Supp. 2d 370, 387 n.19 (E.D.N.Y.) (distinguishing between cases "where an evidentiary rule was correctly applied as a matter of state law, but is either unconstitutional on its face or violates a constitutional right as applied," and cases where the petitioner took no exception to the constitutionality of the state evidentiary rule, but asserted that the state court decision misapplied the state rule, resulting in a constitutional violation), <u>rev'd on other grounds</u>, 229 F.3d 112 (2d Cir. 2000).

[21/]   <u>See also</u>, <u>e.g.</u>, <u>Williams</u> v. <u>Walker</u>, No. 00-CV-5912, 2001 WL 1352105 at *3 (E.D.N.Y. Oct. 31, 2001) (habeas court must first determine if ruling was erroneous under state law, and then whether ruling was of a constitutional magnitude); <u>Coleman</u> v. <u>Greiner</u>, No. 97-CV-2409, 1999 WL 320812 at *5 (E.D.N.Y. May 19, 1999); <u>Till</u> v. <u>Miller</u>, 96 Civ. 4387, 1998 WL 397848 at *4 (S.D.N.Y. July 16, 1998); <u>Mitchell</u> v. <u>Herbert</u>, 97 Civ. 5128, 1998 WL 186766 at *5-6 (S.D.N.Y. Apr. 20, 1998); <u>Copes</u> v. <u>Schriver</u>, 97 Civ. 2284, 1997 WL 659096 at *3 (S.D.N.Y. Oct. 22, 1997); <u>Simmons</u> v. <u>Ross</u>, 965 F. Supp. 473, 480 (S.D.N.Y. 1997); <u>Dey</u> v. <u>Scully</u>, 952 F. Supp. 957, 969 (E.D.N.Y. 1997) ("[T]he Court engages in a two part analysis, examining 1) whether the exclusion [of evidence] was error under state law, and 2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial."); <u>see generally</u> <u>Davis</u> v. <u>Strack</u>, 270 F.3d 111, 123-24 (2d Cir. 2001) (in determining whether failure to give state jury charge violated federal constitution, first question for habeas court is whether the charge was required under New York law, and only if so, was the failure to give the charge of constitutional dimension).

errors not cognizable in the federal system.[22] Here, Murray asserts that his due process rights and

right to a fair trial were violated by the state court's evidentiary rulings. (Pet. ¶ 13(1).)

Third, an erroneous state evidentiary ruling that is asserted to be a constitutional

violation will merit habeas relief only "'where [the] petitioner can show that the error deprived [him]

of a <u>fundamentally fair</u> trial.'" <u>Rosario</u> v. <u>Kuhlman</u>, 839 F.2d at 925 (emphasis in original).[23] The

---

[22] See, e.g., <u>Landy</u> v. <u>Costello</u>, No. 97-2433, 141 F.3d 1151 (table), 1998 WL 105768 at *1 (2d Cir. Mar. 9, 1998) ("To the extent that this claim is based on a <u>Rosario</u> violation, it must fail, because a habeas petition can only be granted to remedy some violation of <u>federal</u> law; the obligation to turn over <u>Rosario</u> material arises under <u>state</u> law. Thus, the only question is whether the prosecution violated <u>Brady</u>.") (emphasis in original); <u>Arocho</u> v. <u>Walker</u>, 01 Civ. 1367, 2001 WL 856608 at *3 (S.D.N.Y. July 27, 2001) ("Violation of the notice requirement of [N.Y. C.P.L.] § 710.30 is purely a matter of state law and raises no constitutional issues for a habeas court to review."); <u>Ventura</u> v. <u>Artuz</u>, 2000 WL 995497 at *12 (same); <u>Roldan</u> v. <u>Artuz</u>, 78 F. Supp. 2d at 276 (<u>Molineux</u> claim not cognizable as such on habeas); <u>Benitez</u> v. <u>Senkowski</u>, 1998 WL 668079 at *5 (bolstering claim does not state federal claim, citing cases); <u>Ayala</u> v. <u>Hernandez</u>, 712 F. Supp. 1069, 1074 (E.D.N.Y. 1989) (police "bolstering" of eyewitness identification testimony held to be, at most, violation of state rule, and thus not could not form basis for constitutional claim).

Indeed, courts have rejected habeas relief where the error violated state rules but comported with the presumptively constitutional Federal Rules of Evidence. See, e.g., <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d 721, 728 (2d Cir. 1996) ("even if admission of [out of court declarant's] statement violated New York law – which unlike federal law requires independent indicia of reliability for a co-conspirator's statement – the statement does not offend the federal Confrontation Clause if it falls within Rule 801(d)(2)'s co-conspirator exception"), <u>cert. denied</u>, 520 U.S. 1108, 117 S. Ct. 1116 (1997); <u>Ford</u> v. <u>Crinder</u>, 97 Civ. 3031, 2001 WL 640807 at *5 (S.D.N.Y. June 8, 2001) ("Admission of evidence that satisfies [the Federal Rules of Evidence] will not violate a [state] criminal defendant's due process rights or provide the basis for habeas corpus relief.").

[23] See also, e.g., <u>Jones</u> v. <u>Stinson</u>, 229 F.3d at 120; <u>Dunnigan</u> v. <u>Keane</u>, 137 F.3d 117, 125 (2d Cir.) ("The introduction of improper evidence against a defendant does not amount to a
(continued...)

test for "fundamental fairness" is whether the excluded evidence, "'evaluated in the context of the entire record,'"[24/] "'create[d] a reasonable doubt [regarding petitioner's guilt] that did not otherwise exist.'"  Taylor v. Curry, 708 F.2d at 891 (quoting the materiality standard defined in United States v. Agurs, 427 U.S. at 112-13, 96 S. Ct. at 2401-02).[25/]

The "fundamental fairness" standard applies to the erroneous exclusion or admission of evidence.  See, e.g., Dunnigan v. Keane, 137 F.3d at 125 ("[f]or the erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'") (quoting Johnson v. Ross, 955 F.2d at 181); Rodriguez v.

---

[23/]     (...continued)
violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'"), cert. denied, 525 U.S. 840, 119 S. Ct. 101 (1998); Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a [habeas] claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial . . . . ").

[24/]     "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."  United States v. Agurs, 427 U.S. 97, 112-13, 96 S. Ct. 2392, 2402 (1976).

[25/]     Accord, e.g., Jones v. Stinson, 229 F.3d at 120; Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996); Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992); Blissett v. Lefevre, 924 F.2d 434, 439 (2d Cir.), cert. denied, 502 U.S. 852, 112 S. Ct. 158 (1991); Collins v. Scully, 755 F.2d at 19; Rosario v. Kuhlman, 839 F.2d at 925; Roldan v. Artuz, 78 F. Supp. 2d at 276; Grant v. Demskie, 75 F. Supp. 2d at 209; Benitez v. Senkowski, 1998 WL 668079 at *5; James v. Senkowski, 1998 WL 217903 at *6; Dey v. Scully, 952 F. Supp. at 971.

O'Keefe, No. 96-2699, 122 F.3d 1057 (table), 1997 WL 557622 at *2 (2d Cir. Sept. 9, 1997), <u>cert.</u>

<u>denied</u>, 522 U.S. 1123, 118 S. Ct. 1068 (1998); <u>Collins</u> v. <u>Scully</u>, 755 F.2d at 18-19; <u>Roldan</u> v.

<u>Artuz</u>, 78 F. Supp. 2d at 276.<u>26/</u>

　　　　　　The final question is how to apply the AEDPA in the context of a fundamental

fairness analysis, an issue addressed by the Second Circuit in <u>Jones</u> v. <u>Stinson</u>, 229 F.3d at 120-21.

In <u>Jones</u>, the state appellate court decided that the trial court's evidentiary rulings had not denied the

defendant a fair trial. <u>Id</u>. at 116. The Second Circuit held that, although it might have found, under

the <u>Agurs</u> standard, that one of the trial court's rulings "create[d] a reasonable doubt that did not

otherwise exist," the Second Circuit could not conclude that the excluded testimony "would so

certainly have created new ground for reasonable doubt that the appellate division's decision

[affirming the trial court's ruling] was objectively unreasonable." <u>Id</u>. at 120. The Second Circuit

thus denied habeas relief based on the AEDPA's deferential review standard. <u>Id</u>. at 120-21.

---

<u>26/</u>　　　For the reasons stated by Judge Block in <u>Dey</u> v. <u>Scully</u>, "[h]armless error analysis is simply
inapplicable to [trial] error that only attains constitutional significance when considered in
the context of the entire trial because such analysis inheres in the initial finding that the error
was constitutionally significant. A determination that such error was not harmless, after
having already concluded that it denied the defendant a fundamentally fair trial, would be
tautological." <u>Dey</u> v. <u>Scully</u>, 952 F. Supp. at 974; <u>see also</u> <u>Kyles</u> v. <u>Whitley</u>, 514 U.S. 419,
436, 115 S. Ct. 1555, 1567 (1995) ("<u>Agurs</u> . . . opted for its formulation of materiality . . .
only after expressly noting that this standard would recognize reversible constitutional error
only when the harm to the defendant was greater than the harm sufficient for reversal under
<u>Kotteakos</u>."); <u>Washington</u> v. <u>Schriver</u>, 255 F.3d 45, 56-57 (2d Cir. 2001) ("The creation of
otherwise non-existent reasonable doubt [under <u>Agurs</u>] satisfies the 'substantial and injurious'
standard" under <u>Brecht</u>.) (quoting <u>Jones</u> v. <u>Stinson</u>, 229 F.3d at 120); <u>Coleman</u> v. <u>Greiner</u>,
1999 WL 320812 at *4-5.

In sum, for Murray to succeed with his federal habeas corpus claim asserting state evidentiary errors, he must establish (1) that the trial court's evidentiary rulings were erroneous as a matter of state law, (2) under <u>Agurs</u>, that admission/exclusion of evidence deprived him of a fair trial, and (3) under the AEDPA, that the state court's ruling constituted an objectively unreasonable application of the <u>Agurs</u> standard.

**B.  The Standard Applied to Murray's Claim that the Prosecutor's Question About "Reupping" Exceeded The Scope of Cross-Examination**

On cross examination, defense counsel questioned Officer Simonetti about whether Murray was the buyer and Allen the seller, about Murray having $35 and Allen $207 at the time of arrest, and the officer's original paperwork charging Allen with possession with intent to sell rather than simple possession.  (<u>See</u> pages 4-5 above.)  To respond to these arguments, on redirect examination of Officer Simonetti, the prosecutor asked Officer Simonetti if he was "familiar with the term 'reup'" and asked him to define the term.  (<u>See</u> page 6 above.)  The judge, however, sustained the defense's objection to the prosecutor's follow-up question as to whether that was "something that may have happened here." (Tr. 340, quoted at page 6 above.)  The prosecutor did not further pursue that line of questioning.  (<u>Id</u>.)  Rather than leave Officer Simonetti's unconnected definition of re-upping alone, however, defense counsel extensively questioned Officer Simonetti about re-upping and the Murray-Allen transaction.  (<u>See</u> pages 6-7 above.)  The damaging testimony about Allen re-upping Murray came out through defense counsel's re-cross examination of Officer Simonetti.  (<u>Id</u>.)  It was that re-cross examination testimony that provided the basis for the

prosecutor's summation argument that Murray only had $35 in cash at the time of his arrest because Allen had relieved Murray of the proceeds from his drug sales during the type of "reup" or resupply-type transaction Officer Simonetti had described.  (See pages 10-11 above.)

The First Department held that the trial court "properly exercised its discretion in permitting redirect examination of a police witness that explored possible explanations of a matter raised by defendant on cross-examination," explaining that "[t]he matter elicited on redirect was responsive to defendant's efforts to suggest that during the transaction at issue he was a buyer and not a seller."  People v. Murray, 308 A.D.2d 397, 397, 764 N.Y.S.2d 626, 627 (1st Dep't 2003) (quoted in full on pages 13-14 above).

In New York, "where . . . the opposing party 'opens the door' on cross-examination to matters not touched upon during the direct examination, a party has the right on redirect 'to explain, clarify and fully elicit [the] question only partially examined' on cross-examination." People

v. Melendez, 55 N.Y.2d 445, 451, 449 N.Y.S.2d 946, 949-50 (1982).[27/] Specifically, the New York

Court of Appeals has held:

> The "opening of the door" theory has been recognized in a variety of situations. For example, apparent inconsistencies or contradictions in a witness' statements or acts brought out on cross-examination to discredit his testimony may be reconciled on redirect by relating to the jury the relevant surrounding circumstances.

People v. Melendez, 55 N.Y.2d at 451, 449 N.Y.S.2d at 950. Trial courts have wide latitude in

deciding when cross-examination "opens the door" to further development on redirect. See, e.g.,

People v. Melendez, 55 N.Y.2d at 451, 449 N.Y.S.2d at 950 ("The extent of redirect examination

is, for the most part, governed by the sound discretion of the trial court."); People v. Conway, 297

---

[27/]   See, e.g., People v. Bolden, 58 N.Y.2d 741, 742, 459 N.Y.S.2d 22, 23 (1982); People v. Regina, 19 N.Y.2d 65, 78, 277 N.Y.S.2d 683, 693 (1966) ("the prosecution's question on redirect examination was properly within the scope of matters gone into on cross-examination and did no more than to explain, clarify and fully elicit a question only partially examined by the defense"); People v. Buchanan, 145 N.Y. 1, 24, writ of error denied, 158 U.S. 31, 15 S. Ct. 723 (1895); People v. Marrero, 156 A.D.2d 141, 142, 548 N.Y.S.2d 188, 189 (1st Dep't 1989) ("[T]he court below properly permitted the introduction of evidence and testimony concerning a prior negative lineup, where defense counsel had 'opened the door' to admission of that evidence by, on cross-examination, repeatedly challenging [a witness's] ability to accurately identify the defendant as the assailant."), appeal denied, 75 N.Y.2d 921, 555 N.Y.S.2d 40 (1990); see also, e.g., United States v. Rea, 958 F.2d 1206, 1225 (2d Cir. 1992) ("The concept of 'opening the door' . . . gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence."); Hernandez v. Filion, 03 Civ. 6989, 2004 WL 286107 at *12 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004) (Berman, D.J.); Green v. Herbert, 01 Civ. 11881, 2002 WL 1587133 at *14 (S.D.N.Y. July 18, 2002) (Peck, M.J.) (discussing N.Y. opening the door concept).

A.D.2d 398, 399, 746 N.Y.S.2d 201, 203 (3d Dep't 2002) ("[T]he scope of redirect examination lies within the sound discretion of the trial court."), appeal denied, 99 N.Y.2d 581, 755 N.Y.S.2d 716 (2003); People v. Blakeney, 219 A.D.2d 10, 14, 618 N.Y.S.2d 642, 644 (1st Dep't 1996) ("[T]he manner and extent of cross- and redirect examination are matters entrusted to the sound discretion of the Trial Judge, who is afforded 'wide latitude' in his or her rulings."), aff'd, 88 N.Y.2d 1011, 648 N.Y.S.2d 872 (1996).

Here, when on redirect the prosecutor asked Officer Simonetti about the "reupping" process, he appropriately sought to reconcile an "apparent inconsistenc[y] or contradiction[] in a witness' statements . . . brought out on cross-examination." See People v. Melendez, 55 N.Y.2d at 451, 449 N.Y.S.2d at 950. Indeed, Murray concedes that the testimony was "elicited . . . in order to explain an inconsistency in proof which had arisen as a result of defense counsel's strong cross-examination." (Murray 1st Dep't Br. at 13.)

When conducting Officer Simonetti's direct examination, the prosecutor never inquired about the amounts of money found on Murray and Allen, nor did he ask Officer Simonetti if Murray and Allen were engaged in a traditional drug sale or some other kind of transaction. During the cross-examination, however, Murray's counsel focused extensively on both of these areas, raising new issues of fact that called some of Officer Simonetti's direct testimony into question. (See page 5 above.) Defense counsel repeatedly asked Officer Simonetti about the street value of the heroin sold and the amounts and denominations of currency found on Murray and Allen. (Id.) Defense counsel also asked Officer Simonetti to speculate about why Allen had $207 in cash when

he was arrested. (Id.) These questions sought to show that Murray was a heroin buyer rather than a seller.

Murray asserts that during Officer Simonetti's redirect, the prosecutor switched from an "original" to an "alternative" theory of the case that should have been raised during direct examination. (See Murray 1st Dep't Br. at 17.) The trial transcript, which this Court has reviewed in its entirety, lends no support to this assertion. During his opening, the prosecutor characterized the transaction between Murray and Allen in vague terms, saying only that there was "some sort of activity, exchange money, exchange drugs, and they do so a couple of times, and Mr. Allen then takes off." (State Opening: Tr. 220.) The prosecutor never asked Officer Simonetti during direct examination to specify whether Murray and Allen undertook a retail drug sale or some other kind of exchange, and only began to explain the re-upping theory when the defense "opened the door" by asking Officer Simonetti to speculate about Allen's role in the transaction and the defense's challenge to the officer's credibility. (See pages 6-7 above.)[28]

---

[28]     The prosecutor on direct did not differentiate between a "traditional" sale and a reupping exchange of drugs and cash and the trial court held that under the statutory definition of "sale" the latter also would support a conviction for third degree criminal sale of a controlled substance. (See page 7 above.) Under New York law, the term 'sell' is broadly defined as to "sell, exchange, give or dispose of to another." Penal Law § 220.00(1). The New York Court of Appeals has held that this definition "include[s] any form of transfer of a controlled substance from one person to another." People v. Starling, 85 N.Y.2d 509, 514, 626 N.Y.S.2d 729, 732 (1995). Murray did not raise in state court or in his present habeas petition the issue of whether, under this broad definition, the drug exchange between Murray and Allen qualified as a "knowing[] and unlawful[] sale" if Murray received more drugs rather than giving them to another party. N.Y. Penal Law § 220.39. The Court therefore need not address the sufficiency of the evidence as to Murray's second "sale" to Allen, under the reupping theory.

Murray's counsel had a fair opportunity to respond to the "reup" theory during his recross-examination, and took full advantage of this opportunity when he questioned Officer Simonetti extensively about his prior testimony and recorded statements regarding Allen's role in the transaction. (See pages 6-7 above.)[29/] In the context of the entire trial, Murray's claim that the prosecutor's "reup" questions denied Murray a fair trial is without factual or legal basis.

Because Murray has failed to meet the first requirement of establishing that the evidentiary ruling was erroneous as a matter of state law (see page 27 above), his habeas claim that the prosecutor's questions on redirect about "reupping" deprived him of a fair trial should be DENIED.

### C. Murray's Habeas Claim that Officer Simonetti Switched Testimony and Engaged in Speculation Is Unexhausted but Deemed Exhausted and Procedurally Barred

In his pro se habeas petition, Murray claims that during redirect the "prosecutor elicit[ed] speculation from his own witness," presumably Officer Simonetti, and that the "witness . . . switch[ed] testimony" during cross-examination. (Dkt. No. 1: Pet. ¶ 13(1).) These claims were neither raised before, nor addressed by, the First Department during Murray's now-final direct appeal. (See pages 13-14 above.)

---

[29/] The Court also notes that there is no way to know what the prosecutor would have tried or been allowed to argue on summation about reupping if defense counsel had not gone into the reupping issue further on re-cross examination. (See pages 6-7 above.) Defense counsel had to make the strategic choice of not pursuing the reup theory after the prosecutor had Officer Simonetti define it but was not permitted to apply it to the facts of this case on redirect, and then objecting if the prosecutor argued the theory on summation, or going into the issue further. Defense counsel chose the latter course, and it was his re-cross examination that really developed the reupping theory.

Section 2254 codifies the exhaustion requirement, providing that "[a]n application

for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available

in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A).[30/]  As the Supreme Court has made clear,

"[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement

of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U .S. at 518,

102 S. Ct. at 1203; accord, e.g., O'Sullivan v. Boerckel, 119 S. Ct. at 1732.[31/]

---

[30/]     See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 119 S. Ct. 1728, 1731 (1999); Rose v.
Lundy, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201 (1982) ("The exhaustion doctrine
existed long before its codification by Congress in 1948" in 28 U.S .C. § 2254.); Picard v.
Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); Bossett v. Walker, 41 F.3d 825, 828
(2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Pesina v. Johnson, 913
F.2d 53, 54 (2d Cir. 1990); Daye v. Attorney General, 696 F.2d 186, 190-94 (2d Cir. 1982)
(en banc).

[31/]     For decisions by this Judge discussing the unexhausted but deemed exhausted and
procedurally barred doctrine in more detailed language, see, e.g., Otero v. Eisenschmidt, 01
Civ. 2562, 2004 WL 2504382 at *34-36 (S.D.N.Y. Nov 8, 2004) (Peck, M.J.); Gillespie v.
Miller, 04 Civ. 0295, 2004 WL 1689735 at *9-10 (S.D.N.Y. July 29, 2004 (Peck, M.J.);
Castro v. Fisher, 04 Civ. 0346, 2004 WL 1637920 at *26-27 (S.D.N.Y. July 23, 2004); Del
Pilar v. Phillips, 03 Civ. 8636, 2004 WL 1627220 at *10-11 (S.D.N.Y. July 21, 2004);
Hernandez v. Fillion, 03 Civ. 6989, 2004 WL 286107 at *16-17 (S.D.N.Y. Feb. 13, 2004)
(Peck, M.J.), report & rec. adopted, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004) (Berman,
D.J.); Maldonado v. Greiner, 01 Civ. 0799, 2003 WL 22435713 at *26 (S.D.N.Y. Oct. 28,
2003) (Peck, M.J.); Wilder v. Herbert, 03 Civ. 397, 2003 WL 22219929 at *6-9 (S.D.N.Y.
Sept. 26, 2003) (Peck, M.J.); Besser v. Walsh, 02 Civ. 6775, 2003 WL 22093477 at *30-32
(S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), report & rec. adopted, 2003 WL 22681429
(S.D.N.Y. Nov. 13, 2003) & 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003) (Kaplan, D.J.);
Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *6-8 (S.D.N.Y. Oct. 18, 2002)
(continued...)

In this case, it is clear that Murray is now barred from raising these new claims in state court because they could have been raised on direct appeal, but were not.[32/] Consequently, they are deemed exhausted and procedurally barred from federal habeas review.

---

[31/]     (...continued)
(Peck, M.J.); Soto v. Greiner, 02 Civ. 2129, 2002 WL 1678641 at *13-15 (S.D.N.Y. July 24, 2002) (Peck, M.J.); Jamison v. Berbary, 01 Civ. 5547, 2002 WL 1000283 at *15-16 (S.D.N.Y. May 15, 2002) (Peck, M.J.) (citing my prior decisions); Jordan v. LeFevre, 22 F. Supp. 2d 259, 266 (S.D.N.Y. 1998) (Mukasey, D.J. & Peck, M.J.), aff'd on this ground, rev'd on other grounds, 206 F.3d 196, 198-99 (2d Cir. 2000).

[32/]     As the Second Circuit explained in Washington v. James:

> Consequently, we do not believe [Petitioner] has fairly presented to the state courts his constitutional objection . . . . [T]he state courts have not had an opportunity to address the federal claim raised on habeas review and this normally would preclude our review of that claim.
>
>          . . . .
>
> As we have already noted, this preclusion is not technically the result of a failure to exhaust state remedies, but is due to a procedural default.  [Petitioner] no longer has the right to raise his claim under New York law either on direct appeal, see McKinney's 1993 Revised N.Y. Court Rules § 500.10(a), or on collateral review.  New York's collateral procedures are unavailable because appellant could have raised the claim on direct review but did not. See N.Y. Crim. Proc. Law § 440.10(2)(c).  Therefore [petitioner] has no further recourse in state court.  See 28 U.S.C. § 2254(c); Grey v. Hoke, 933 F.2d [at] 120 . . . .  Because he failed to raise his claim in state court and no longer may do so, his claim is procedurally defaulted.

996 F.2d 1442, 1446-47 (2d Cir. 1993), cert. denied, 510 U.S. 1078, 114 S. Ct. 895 (1994).

Even if this Court were to review the substance of these two claims, it would find them each without merit. Murray's assertion that the prosecutor elicited speculation from a witness is vague and not grounded by reference to any specific trial testimony. (See Pet. ¶ 13(1).) Only a single question from the prosecutor during redirect – asking Officer Simonetti whether he believed the drug transaction between Murray and Allen was a "reup" – called for speculation, and Murray's counsel immediately objected and the trial judge sustained the objection before Officer Simonetti responded. (See page 6 above.)

Murray's claim that a witness switched testimony goes to witness credibility, and questions of witness credibility are jury questions and a federal habeas court may not reassess the jury's finding of credibility: "'[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.'" Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (Peck, M.J.) (quoting Anderson v. Senkowski, No. CV-92-1007, 1992 WL 225576 at *3 (E.D.N.Y. Sept. 3, 1992), aff'd mem., 992 F.2d 320 (2d Cir.1993)).[33/]

_____

[33/]  See also, e.g., Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *31-33 (S.D.N.Y. Jun. 10, 2005) (Peck, M.J.); Huber v. Schriver, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his conviction. . . . However, under both the state law. . . and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury . . . ."); Carromero v. Strack, 98 Civ. 3519, 1998 WL 849321 at *5 (S.D.N.Y. Nov. 19, 1998) (Peck, M.J.)
(continued...)

For these reasons, Murray's habeas claim that he was denied a fair trial because Officer Simonetti speculated and switched testimony should be DENIED.

## III. MURRAY'S CLAIM THAT THE PROSECUTOR'S SUMMATION DEPRIVED HIM OF A FAIR TRIAL IS WITHOUT MERIT AND SHOULD BE DENIED

Murray claims that the prosecutor engaged in misconduct during summation by referring to Murray as an "expert" and a "drug seller," and by suggesting to the jury that the police could not have engaged in misconduct without complaints from the community. (Dkt. No. 1: Pet. ¶ 13(2); Dkt. No. 1: Pet. Att.: Murray 1st Dep't Br. at 23-27.)

---

[33]/     (...continued)
(evidence sufficient where jury credited prosecution witnesses' testimony "despite some inconsistencies between their trial testimony and prior statements to the police and to the grand jury"); Davis v. Senkowski, No. 97-CV-2328, 1998 WL 812653 at *5 (E.D.N.Y. Aug. 6, 1998) ("The jury here chose to believe [the prosecution witness]'s testimony despite any inconsistencies in the evidence, and I will not reassess that decision."); Williams v. Bennet, 1998 WL 236222 at *5 ("Williams relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury. These inconsistencies were placed before the jury by the defense, which made them a central focus of its case. The jury's decision to credit [the victim]'s testimony, despite its inconsistencies, over Williams' testimony, is fully supported by the record."); Taxiarhopolous v. Spence, No. CV 92-0790, 1992 WL 403112 at *4 (E.D.N.Y. Dec. 28, 1992) (The petitioner "cannot show that the evidence was insufficient to support conviction. For example, he challenges the credibility of the main prosecution witness . . ., pointing to alleged inconsistencies in his testimony. This, however, was an argument made to, and properly resolved by, the trial jury."); Fagon v. Bara, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony").

## A.    Federal Habeas Review Standard for Prosecutorial Misconduct Claims[34/]

Prosecutorial misconduct violates a defendant's due process rights only when it is of "sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 3109 (1987); accord, e.g., United States v. Muja, No. 02-1175, 102 Fed. Appx. 212, 216, 2004 WL 1406312 at *3 (2d Cir. June 23, 2004) ("'It is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required.'"); United States v. Coriaty, 300 F.3d 244, 255 (2d Cir. 2002) (Even on direct federal appeal, "[b]efore a conviction will be reversed, a prosecutor's comments on summation must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.' The defendant must point to 'egregious misconduct.'") (quoting Donnelly v. DeChristofaro, 416 U.S. 637, 643, 647, 94 S. Ct. 1868, 1871, 1873 (1974)); United States v. Elias, 285 F.3d 183, 190 (2d Cir.) ("To warrant reversal, the prosecutorial misconduct must cause the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process.")

---

[34/]    For additional decisions by this Judge discussing the federal habeas review standard for prosecutorial misconduct claims in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Roman v. Filion,  04 Civ. 8022, 2005 WL 1383167 at *17-18 (S.D.N.Y. Jun. 10, 2005) (Peck, M.J.); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *11 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *20 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056 at *15 (S.D.N.Y June 16, 2004) (Peck, M.J.); Green v. Herbert, 01 Civ. 11881, 2002 WL 1587133 at *17 (S.D.N.Y. July 18, 2002) (Peck, M.J.); Brock v. Artuz, 99 Civ. 1903, 2000 WL 1611010 at *9 (S.D.N.Y. Oct. 27, 2000) (Peck, M.J.); Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *30 (S.D.N.Y. Nov. 17, 1999) (Peck, M.J.); Lugo v. Kuhlmann, 68 F. Supp. 2d  347, 367 (S.D.N.Y. 1999) (Patterson, D.J. & Peck, M.J.).

(internal quotations omitted), <u>cert. denied</u>, 537 U.S. 988, 123 S. Ct. 430 (2002); <u>United States</u> v. <u>McCarthy</u>, 54 F.3d 51, 55 (2d Cir. 1995), <u>cert. denied</u>, 516 U.S. 880, 116 S. Ct. 214 (1995); <u>Blisset</u> v. <u>LeFevre</u>, 924 F.2d 434, 440 (2d Cir.), <u>cert. denied</u>, 502 U.S. 852, 112 S. Ct. 158 (1991).[35/] Stated another way, "the law is settled that 'federal habeas relief is not available on the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were so fundamentally unfair as to deny petitioner a fair trial.'" <u>Tejada</u> v. <u>Senkowski</u>, 92 Civ. 3012, 1993 WL 213036 at *3 (S.D.N.Y. June 16, 1993), <u>aff'd mem.</u>, 23 F.3d 397 (2d Cir.), <u>cert. denied</u>, 513 U.S. 887, 115 S. Ct. 230 (1994).[36/]

   To properly evaluate the prosecution's actions, the alleged misdeeds must be placed in context, and "[t]he severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." <u>Blisset</u> v. <u>LeFevre</u>, 924 F.2d at 440; <u>accord,</u>

---

[35/] See also, <u>e.g.</u>, <u>Readdon</u> v. <u>Senkowski</u>, 96 Civ. 4722, 1998 WL 720682 at *4 (S.D.N.Y. Oct. 13, 1998); <u>Hurd</u> v. <u>Keane</u>, 97 Civ. 2991, 1997 WL 582825 at *4 (S.D.N.Y. Sept. 19, 1997); <u>Beverly</u> v. <u>Walker</u>, 899 F. Supp. 900, 911 (N.D.N.Y. 1995), <u>aff'd</u>, 118 F.3d 900 (2d Cir.), <u>cert. denied</u>, 522 U.S. 883, 118 S. Ct. 211 (1997); <u>Washington</u> v. <u>Walker</u>, 89 Civ. 7841, 1994 WL 391947 at *3 (S.D.N.Y. July 28, 1994) ("Even where a prosecutor's remarks are improper, 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'") (quoting <u>Floyd</u> v. <u>Meachum</u>, 907 F.2d 347, 355 (2d Cir. 1990) (quoting <u>Garofolo</u> v. <u>Coombe</u>, 804 F.2d 201, 206 (2d Cir. 1986))).

[36/] Accord, <u>e.g.</u>, <u>Franza</u> v. <u>Stinson</u>, 58 F. Supp. 2d 124, 149 (S.D.N.Y. 1999) (Kaplan, D.J. & Peck, M.J.); <u>see also</u>, <u>e.g.</u>, <u>Donnelly</u> v. <u>DeChristoforo</u>, 416 U.S. 637, 647, 94 S. Ct. 1868, 1873 (1974); <u>Floyd</u> v. <u>Meachum</u>, 907 F.2d 355 (quoting <u>Garofolo</u> v. <u>Coombe</u>, 804 F.2d at 205); <u>Edmonds</u> v. <u>McGinnis</u>, 11 F. Supp. 2d 427, 437 (S.D.N.Y. 1998); <u>Gaiter</u> v. <u>Lord</u>, 917 F. Supp. 145, 153 (E.D.N.Y. 1996); <u>Jones</u> v. <u>Kuhlmann</u>, 93 Civ. 5963, 1995 WL 733649 at *4 (S.D.N.Y. Dec. 12, 1995).

e.g., Greer v. Miller, 483 U.S. at 766, 107 S. Ct. at 3109 ("it is important 'as an initial matter to place th[e] remar[k] in context'"); United States v. McCarthy, 54 F.3d at 55; United States v. Friedman, 909 F.2d 705, 709 (2d Cir. 1990); United States v. Biasucci, 786 F.2d 504, 514 (2d Cir.), cert. denied, 479 U.S. 827, 107 S. Ct. 104 (1986).[37/]

**B.** **Application of the Standard to Murray's Prosecutorial Summation Misconduct Claim**

First, Murray challenges the prosecutor's comment during summation that "if there is any wrongdoing by the police, I am sure that this community would have said something about that." (Tr. 450.) Murray claims the comment was improper because it bolstered Officer Simonetti's testimony. (Murray 1st Dep't Br. at 24-26.) Even if this were bolstering, the rule forbidding "bolstering" is a state law standard, and a claim that a prosecutor's statements constituted improper bolstering does not present a federal constitutional claim cognizable on federal habeas review. E.g., Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *25 n.41 (S.D.N.Y. June 10, 2005) (Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *21 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056 at *15 (S.D.N.Y. June 16, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 1656568 (S.D.N.Y. Jul. 23, 2004) (Berman, D.J.); Hernandez

---

[37/] See also, e.g., Hurd v. Keane, 1997 WL 582825 at *4; Beverly v. Walker, 899 F. Supp. at 911.

v. Filion, 03 Civ. 6989, 2004 WL 286107 at *12 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), report & rec. adopted, 2004 WL 555722 (S.D.N.Y. Mar. 19, 2004) (Berman, D.J.).[38]

Further, assuming arguendo that any impropriety were cognizable under federal habeas review, the prosecutor's statement, in the context of the entire trial, would constitute harmless error. There was strong evidence of Murray's guilt. Officer Simonetti testified that he observed Murray engage in two separate drug transactions and watched as officers arrested the same man he had seen engaging in those transactions. (See page 3 above.) When arrested, Murray dropped ten envelopes of "Shock" heroin, the same brand found on both the first buyer as well as on Allen. (See pages 3-4 above.) Finally, the prosecution's theory of "reupping" (see page 10 above) reasonably explained why Allen had more cash than Murray, even though Murray possessed a larger quantity of drugs.

The trial judge also adequately addressed any prejudice that may have resulted from the statement. Murray's counsel immediately objected after the prosecutor's "community" statement

---

[38]    See also, e.g., Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *49 n.77 (S.D.N.Y. June 3, 2003) (Peck, M.J.) ("Bolstering is generally not a cognizable federal claim."), report & rec. adopted, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005) (Pauley, D.J.); Bailey v. People of State of New York, 01 Civ. 1179, 2001 WL 640803 at *8 (S.D.N.Y. June 8, 2001) (Peck, M.J.) (& cases cited therein); Diaz v. Greiner, 110 F. Supp. 2d 225, 235 (S.D.N.Y. 2000) ("Bolstering claims have been (expressly) held not to be cognizable on federal habeas review."); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *32 n.23 (S.D.N.Y. June 6, 2000) (Peck, M.J.); Benitez v. Senkowski, 97 Civ. 7819, 1998 WL 668079 at *5 (S.D.N.Y. Sept. 17, 1998) (Cote, D.J. & Peck, M.J.); Orr v. Schaeffer, 460 F. Supp. 964, 967 (E.D.N.Y. 1978) (Weinfeld, D.J.) ("This Circuit has never regarded the practice [of bolstering] as inimical to trial fairness.").

was made, and the trial court sustained the objection. (See pages 10-11 above.) While the judge declined to give a specific curative instruction, during the jury charge the judge instructed the jury to disregard any statements or testimony that resulted in a sustained objection, and that lawyers' statements were not evidence. (See page 12 above.) The jury is presumed to obey a court's curative instruction. See, e.g., Greer v. Miller, 483 U.S. 756, 767 n.8, 107 S. Ct. 3102, 3109 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence . . . , unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions."); Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987) ("juries are presumed to follow their instructions"); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 367, 83 S. Ct. 448, 463 (1963) (When a limiting instruction is clear, "[i]t must be presumed that the jury conscientiously observed it.").[39/]

Second, Murray challenges the prosecutor's suggestion that Murray was an "expert[]" and a "drug seller" who considered the drug trade a "game." (Tr. 448, quoted more fully on page 10 above.) At least in regard to the statement that Murray was an "expert" drug seller, Murray correctly

---

[39/]    See also, e.g., United States v. Linwood, 142 F.3d 418, 426 (7th Cir.) ("Juries may not be familiar with the hearsay rule, but the law assumes that they can and do follow the limiting instructions issued to them."), cert. denied, 119 S. Ct. 224 (1998); Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir.) (the court "assume[s] that a jury applies the instructions it is given"), cert. denied, 519 U.S. 834, 117 S. Ct. 106 (1996); United States v. Castano, 999 F.2d 615, 618 (2d Cir. 1993); Roman v. Filion, 2005 WL 1383167 at *21; James v. Artus, 2005 WL 859245 at *12 & n. 26; Kanani v. Phillips, 2004 WL 2296128 at *19 & n.31; Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *24 & n.45 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.) (citing cases); Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *31 n.26 (S.D.N.Y. Nov. 17, 1999) (Peck, M.J.).

argues (Murray 1st Dep't Br. at 26-27) that this comment may have improperly suggested a criminal propensity.[40/] See, e.g., People v. LaPorte, 306 A.D.2d 93, 96-97, 762 N.Y.S.2d 55, 58 (1st Dep't 2003) (prosecutor's suggestion that defendant chose to live on the street to pursue a life of crime was unduly prejudicial when combined with other improper statements); People v. Alfonso, 194 A.D.2d 358, 360, 599 N.Y.S.2d 543, 545 (1st Dep't 1993) (prosecutor's statement during summation that defendant was a "pro" at drug selling deprived defendant of a fair trial when it compounded prejudice resulting from improper testimony of uncharged crimes); but see, e.g., People v. Bierenbaum, 301 A.D.2d 119, 150-51, 748 N.Y.S.2d 563, 587-88 (1st Dep't 2002) ("[W]hen viewed in the complete context of [the prosecutor's] closing statements . . . [and] when . . . read together with the court's cautionary charges," summation arguments suggesting defendant had a violent propensity did not require a new trial.), appeal denied, 99 N.Y.2d 626, 760 N.Y.S.2d 107, cert. denied, 540 U.S. 821, 124 S. Ct. 134 (2003).

In a federal habeas petition, improper conduct by the prosecution during summation must be considered in light of any curative instruction from the trial court, the severity of the comment, and the likelihood of conviction if the statement had not been made. See, e.g., United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004)("[E]ven if the [prosecutor's] comments were improper, they did not cause [the defendant] substantial prejudice. . . . The alleged misconduct, if any, was not severe in this case[, the district judge] provided an immediate curative instruction

---

[40/] By contrast, the prosecutor's challenged argument that Murray was a "drug seller" strikes the Court as nothing more than an accurate restatement of the actual charge against Murray – namely that, on the two occasions involved in the trial, he sold drugs.

[and] . . . it is highly likely [the defendant] would have been convicted even in the absence of the prosecutor's remarks."); United States v. Drescher, No. 01-1705, 77 Fed. Appx. 45, 48, 2003 WL 22299681 at *2 (2d Cir. Oct. 8, 2003) (despite improper remark by prosecution in its rebuttal summation, given the "innocuous interpretation drawn by the district judge, the strength of the evidence against [the defendant], and the district court's instructions to the jury, which insured the jury's proper understanding of the defendant's rights, we find that the incident was harmless beyond a reasonable doubt and had no effect on the jury's deliberations."); United States v. Gambina, Nos. 00-1545, 02-1076, 51 Fed. Appx. 40, 42, 2002 WL 31558029 at *1 (2d Cir. Nov. 19, 2002) ("[T]he prosecutor's remarks did not cause 'substantial prejudice.' While some of the[] comments were inappropriate, none were severe or egregious. Moreover, the challenged remarks were substantially mitigated by defense counsel's objections, the trial court's instructions, and the prosecutor's clarifications. Finally, there was overwhelming evidence of [the defendant's] guilt."); United States v. Elias, 285 F.3d at 190-92 (prosecution comments during summation that "grossly mis-characterized [the defense's argument] and said that the defense was . . . insulting [a] battered victim" do not require a new trial when they constitute "an aberration in an otherwise fair proceeding," the trial judge issued a curative jury instruction and the defendant "most likely would have been convicted even without the improper remarks."); Rao v. Artuz, No. 97-2703, 199 F.3d 1323 (table), 1999 WL 980947 at *2-3 (2d Cir. Oct. 22, 1999) ("strength of the evidence against the petitioner" was enough to "bar[] the conclusion that he suffered actual prejudice as a result of the prosecutor's remarks"); Tankleff v. Senkowski, 135 F.3d 235, 253 (2d Cir. 1998) ("[S]everity of the prosecutor's

misconduct . . . was mitigated by the brevity and fleeting nature of the improper comments" and "the evidence was [not] so closely balanced that the prosecutor's comments were likely to have had a substantial effect on the jury"); Herrera v. Lacy, No. 95-2800, 112 F.3d 504 (table), 1996 WL 560760 at *2 (2d Cir. Oct. 3, 1996) ("While some improper statements were made . . . , the misconduct was not so severe that it was not rendered harmless by the court's curative instruction and the substantial evidence of [petitioner's] guilt."); Bentley v. Scully, 41 F.3d 818, 824-25 (2d Cir. 1994) (denying prosecutorial misconduct claim where prosecution presented "compelling evidence" against petitioner and alleged misconduct was both brief and isolated), cert. denied, 516 U.S. 1152, 116 S. Ct. 1024 (1996).[41/]

---

[41/]  See also, e.g., United States v. Rivera, 971 F.2d 876, 885 (2d Cir. 1992) (court's instructions to jury obviated any prosecutorial error); Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (although prosecutor made improper statements during summation, no prejudice to defendant where trial court instructed jury that the summations were not evidence and case against defendant was strong); Strouse v. Leonardo, 928 F.2d 548, 557 (2d Cir. 1991) (no violation where "cumulative effect of the prosecutor's alleged misconduct was not so severe as to amount to the denial of a fair trial [and] absent the alleged misconduct, . . . overwhelming evidence" existed against petitioner); Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990) ("clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's" misconduct), cert. denied, 501 U.S. 1221, 111 S. Ct. 2835 (1991); United States v. Parker, 903 F.2d 91, 98-99 (2d Cir.) (even where prosecutor acted improperly, no claim for misconduct where "transgression was isolated, the trial court took swift and clear steps to correct [improper conduct], and the evidence against the defendant was strong"), cert. denied, 498 U.S. 872, 111 S. Ct. 196 (1990); United States v. Coffey, 823 F.2d 25, 28 (2d Cir. 1987) (no constitutional violation where alleged misconduct was isolated and not intentional, the trial court provided curative instructions and trial evidence demonstrated defendant's guilt); United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam) ("the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the [misconduct] tends to be deemed insubstantial . . . "), cert. denied, 456 U.S. 989, 102 S. Ct. 2269 (1982); Roman v. Filion,

(continued...)

Although improper, the prosecutor's fleeting reference to Murray as an "expert" does not approach a level justifying habeas relief. First, viewed in context, the prosecutor's statement that Murray was an "expert" was clearly intended not to imply that Murray was guilty because of a propensity to commit the crime, but rather to suggest that Murray was sophisticated enough to engage in a "reup" transaction. See, e.g., United States v. Zackson, 12 F.3d 1178, 1183 (2d Cir. 1993) (although prosecutor's description of defendant as an "experienced drug dealer" "approached the outer frontier of its permissible use," it did not cause substantial prejudice when the court "[did] not understand the prosecutor to have been arguing propensity."), cert. denied, 512 U.S. 1224, 114 S. Ct. 2717 (1994). Second, again considering the strong evidence against Murray, the prosecutor's single statement that Murray was an expert drug seller was unlikely to have swayed the jury towards a guilty verdict. Third, Murray's defense counsel objected twice in succession when the statements

---

41/ (...continued)
2005 WL 1383167 at *20; James v. Artus, 2005 WL 859245 at *12; Smalls v. McGinnis, 2004 WL 1774578 at *21; Peakes v. Spitzer, 2004 WL 1366056 at *19; Green v. Herbert, 01 Civ. 11881, 2002 WL 1587133 at *18 & n.34 (S.D.N.Y. Jul. 18, 2002) (Peck, M.J.); Brock v. Artuz, 99 Civ. 1903, 2000 WL 1611010 at *10-11 & n.14 (S.D.N.Y. Oct. 27, 2000) (Peck, M.J.); Cruz v. Greiner, 1999 WL 1043961 at *31 (no constitutional violation where prosecutor's questioning was brief, court gave curative instruction and there was strong evidence of guilt); Lugo v. Kuhlmann, 68 F. Supp. 2d 347, 368 (S.D.N.Y. 1999) (Patterson, D.J. & Peck, M.J.) (no prejudice "based on the lack of severity of the alleged misconduct and the strong evidence of [petitioner's] guilt"); Romer v. Keane, 94 Civ. 4980, 1995 WL 758727 at *6 (S.D.N.Y. Dec. 22, 1995) (finding that any alleged prosecutorial misconduct "was cured by the overwhelming evidence of petitioner's guilt"); Magnotta v. Berry, 906 F. Supp. 907, 926 (S.D.N.Y. 1995) (no constitutional violation based on alleged prosecutorial misconduct where "petitioner almost certainly would have been convicted absent the improper conduct"); Barnett v United States, 870 F. Supp. 1197, 1206 (S.D.N.Y. 1994) (no constitutional violation where "alleged misconduct was not severe," the court "immediately issued a corrective instruction" and "prosecutor's case was extremely strong").

were made.  (See page 10 above.)  Although the trial judge implicitly overruled the first objection, the judge responded to the second objection by instructing the prosecutor to "focus on the charges here, please." (Tr. 448.)  Under the deferential AEDPA review standard, this Court cannot say that the First Department erred or that these isolated comments, followed by a sustained objection and coupled with strong evidence of Murray's guilt, deprived Murray of a fair trial.  See, e.g., Smalls v. McGinnis, 04 Civ. 0301, 2004 WL 1774578 at *31 (S.D.N.Y. Aug. 10, 2004) (Peck, M.J.) ("Taken as a whole in the context of the entire trial," prosecutor's suggestion during summation that defendant had propensity to commit crimes because he was on parole did not deprive him of a fair trial.); Pope v. Lord, No. 00 Civ. 6530, 2003 WL 21812455 at *6-7 (E.D.N.Y. Jul. 23, 2003) (habeas relief was not warranted even though "[t]he prosecutor should not have made an implied propensity argument . . . [T]he contested statements were relatively harmless when weighed against the compelling eyewitness testimony . . ."); Francis v. Hoke, No. Civ. 85-4230, 1990 WL 26647 at *2 (E.D.N.Y. Feb. 26, 1990) (Weinstein, D.J.) (Although "'the prosecutor improperly used defendant's prior conviction of petit larceny to show a criminal propensity,' . . . The case does not seem to warrant second-guessing by the federal courts."), aff'd, 923 F.2d 844 (2d Cir. 1990), cert. denied, 499 U.S. 939, 111 S. Ct. 1394 (1991).

For these reasons, Murray's claims of prosecutorial misconduct during summation should be DENIED.

## **CONCLUSION**

For the reasons discussed above, Murray's habeas corpus petition should be DENIED, and a certificate of appealability should not issue.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek

v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:     New York, New York
           June 29, 2005

Respectfully submitted,

**Andrew J. Peck**
United States Chief Magistrate Judge

Copies to:    David Murray
            Luke Martland, Esq.
            Judge Kimba M. Wood